We will hear argument this morning in Case No. 15-8544, Beckles v. United States. Ms. Bergman. Mr. Chief Justice, and may it please the Court, on average, attaching the career offender label to a Federal defendant both doubles his sentence and increases it by seven years. At the time Petitioner was sentenced, a defendant could qualify as a career offender if one or more of his predicate offenses fell within the residual clause of the career offender guideline, and yet all now agree that the residual clause is so unintelligible that it is impossible to discern its meaning. Petitioner here submits three things. First, that invoking a so shapeless a provision to enhance someone's sentence in such a significant way does not comport with due process. Second, a ruling that the career offender residual clause is void for vagueness is substantive and, therefore, has retroactive effect in Petitioner's case. And third, that voiding the residual clause also invalidates the guideline's commentary that identified Petitioner's offense as a crime of violence. As such, Petitioner is entitled to a resentencing without the career offender enhancement. Ginsburg You would agree, would you not, that if the commentary counts, if it counts, then there's nothing imprecise about possessing a sawed-off shotgun, right? Yes, Your Honor. I agree that there is nothing imprecise about possession of a sawed-off shotgun. Where the constitutional concerns come into play with the commentary is actually at the point where the commission was interpreting the residual clause in order to identify the possession of a shotgun offense as falling within the residual clause. And the reason why that violates due process is in part is because the commission was attempting to clarify a provision that can't be clarified. I mean, the Court has held in Johnson that the residual clause was a statute. Kennedy I don't mean to interrupt, but this is part of Justice Ginsburg's question. Suppose there were a statute in Johnson, and read just like the residual clause read, is that an example of a dangerous offense is or an offense which creates a serious risk is the possession of a sawed-off shotgun. That was in the statute. Well, Your Honor, the court has Would the statute then be valid? Your Honor, the statute itself. In a shotgun case. If the statute itself included that language, yes, Your Honor. But the commentary Yes, it would be valid. If the possession of a sawed-off shotgun was listed in the statute itself. Well, in answer to Justice Ginsburg's question, why can't the sentencing commission, the agency, do that? Well, Your Honor, because when the sentencing commission was interpreting when the sentencing commission created the commentary, it was interpreting the language of the residual clause. Do we know that for sure? Well, yes, Your Honor. We know it in several ways. One, the sawed-off shotgun offense can only fall within the residual clause because the text of the guideline states three exclusive definitions for the term crime of violence. Possession of a sawed-off shotgun does not fall within the first definition because there's no element of force. It is not one of the four enumerated offenses. Because the guideline states forth these three exclusive definitions, the only definition it could fall within would be the residual clause. We also know it because when the commission amended the commentary to include the possession of the sawed-off shotgun offense, the reasons for amendment stated that it was doing so based on lower court decisions concluding that possession of a sawed-off shotgun fell within the residual clause. Alito, what if the guidelines themselves said that the term crime of violence means, among other things, burglary of a dwelling, arson, extortion, involuntary use of explosives, involves possession of a sawed-off shotgun, or otherwise involves conduct that presents a serious potential risk of physical injury to another? Would there be a vagueness problem then? No, Your Honor, but that would be because the offense would be in the text of the guideline itself. And here the issue isn't just the vagueness, but it's also the respect that the court has to give to the agency's interpretation of a guideline. And with the commentary here, Your Honor, the commission was not interpreting its own words. I mean, the text of the guideline was not language that the commission itself created. It was not interpreting the enabling statute there. It was interpreting the exact same words that the court was interpreting  The clearfender was not interpreting the enabling statute. Alito, the guidelines' provisions are the commission's words. Now, they borrowed them from a statute, but they didn't have to do that. No, they didn't. But they did. So they were their words, and they interpreted their words in the commentary. Yes, Your Honor, but in terms of the deference that this Court gives to agencies' interpretations of its regulations, where a commission is — I'm sorry — where the commission is interpreting guideline text that is not its own words, but it's the words of Congress here, the text of the guideline is the same text as the Armed Career Criminal Act. The commission, in adopting the career offender guideline, stated it was explicitly incorporating the language of the Armed Career Criminal Act. And so in this instance, the commission is in no better position to interpret that language than the court. Sotomayor, perhaps you can go back to the process here.  Correct? Well, the original definition of the career offender guideline did not include — but at some point, yes, Your Honor, the commission passed an amendment that included the residual clause. Wasn't the commission — aren't those amendments approved by Congress? Yes, Your Honor, the residual clause, yes. The text of the guideline is approved by Congress. The commentary, however, is not. That's my question. So the commentary is not approved by Congress. Well, that commentary that added the sawed-off shotgun, was it simultaneous with the adoption of the residual clause to define crime of violence? No, Your Honor, it was not. It was adopted in 2004. It was not part of the guideline that was submitted to Congress for approval. The commentary was adopted in 2004 without Congress's approval. Let me ask you a more fundamental question, and I don't want to unduly shock the attorneys who were here from the Sentencing Commission, but imagine there were no sentencing guidelines. So you have a criminal provision that says that a person who is convicted of this offense may be imprisoned for not more than 20 years. That's all it says. Now, is that unconstitutionally vague? No, Your Honor. Well, that seems to be a lot vaguer than what we have here. So how do you reconcile those two propositions? Well, Your Honor, we submit that arbitrary determinate sentencing, such as with a vague guideline, is not the same as an indeterminate sentencing scheme such as the Court described. Our position is that the use of a vague guideline, in fact, is worse than indeterminate sentencing because it systematically injects arbitrariness into the entire sentencing process. And there is more arbitrariness because of this guideline than there was before the guidelines were passed. Is there any evidence of that? I have a lot of evidence it wasn't. Well, I think, Your Honor, it's especially so here because the Court has said that there is no indeterminate sentencing scheme. Especially so. Is it so at all? There was a system before the guidelines exactly as Justice Alito said. Moreover, that system is existing today, side by side with the guidelines, in any case in which the judge decides not to use the guidelines. So I don't get it. I really don't. And you can be brief here because it's really the government that has to answer this question for me. I don't understand where they're coming from on this, and you don't have to answer more than briefly. But I do have exactly the same question that Justice Alito had. Well, I think here, Your Honor, that the guidelines hold a special place in the sentencing scheme because the Court has stated repeatedly that the guidelines are both the lodestone and the lodestar of Federal sentencing. And because of that, they are sufficiently binding in a way that an indeterminate sentencing scheme is not. Well, less and less, right? I mean, there are steadily increasing percentage of departures from the guidelines. That's correct, Your Honor. There is an increasing number of departures from the guidelines. But that does not mean that they don't have force. And the Court has held several times in recent years in Pugh and Melina Martinez, the Court has recognized that the power that the guidelines have over the Federal sentences. The Court has recognized that as the guideline range goes up and down, so too do the applicable sentences. Roberts Well, if the indeterminate sentencing is all right, it would seem to me that even the vaguest guideline would be an improvement, and so difficult to argue that it's too vague to be applied. I disagree, Your Honor, because even in an indeterminate sentencing scheme, due process did apply. The Court's early cases in Townsend v. Burke and United States v. Tucker indicated that there were due process concerns depending on considerations that the Court was using. There, it was material misinformation. Here, the Court also expressed concern about arbitrariness even in an indeterminate sentencing scheme. And here, the problem with using a vague guideline is that it injects arbitrariness into every sentencing decision that relies on that guideline. Alito Well, you're saying there's more arbitrariness under this provision than there was under the pre-Sentencing Reform Act sentencing system, where a judge would pick a sentence between zero and 20 years based on that judge's personal ideas about retribution, deterrence, and incapacitation. And in practice, there were judges who, under that system, always imposed a very light sentence for a particular offense, and other judges who always imposed a heavy sentence for that particular offense. Yes, Your Honor, but it was always an individualized determination, and I would The respect that I have for Federal judges make me believe that that was not done in an arbitrary way. Where is the problem with the guidelines? Kennedy Well, of course, your argument applies to State systems as well. And you're telling us that the more specific a legislature or an agency tries to make guidance for the judge, the more chance there is for vagueness. And the statute of Section 3553 itself of 18 U.S.C. says you talk about the statute of Section 3553, you talk about the characteristics of the defendant, okay, seriousness of the offense, okay. Your argument is sweeping, and you're saying that the more specific guidance you give, the more danger there is of unconstitutionality. That's very difficult to accept. Well, Your Honor, I would disagree with your premise that this is more specific guidance. The Court stated in Johnson that the words of the residual clause were meaningless, were unintelligible. And so if you could just say the less said, the better in sentencing. I'm sorry, Your Honor. You're saying that the less said, the better. No, Your Honor, what I'm saying. Like that system. What I'm saying, Your Honor, is that if the Court is – if a court is provided guidance with respect to how it is supposed to impose a sentence, and here district courts are required to calculate the guideline range. They are required to consider the career offender residual clause in every case. In every case, a court must consider whether a defendant's predicate offenses qualify him for this enhancement that both doubles his sentence and may extend it by a term of years. And the fact that the sentence and guidelines, I mean, I just opened them at random. I can see provisions that would generate a, you know, an arguable vagueness challenge if they were in a criminal statute. How about more than minimal planning? Do you think that's sufficiently – that's sufficiently clear to satisfy vagueness concerns if, you know, you're guilty of this offense if it involved more than minimal planning, or the difference between a serious bodily injury and a permanent or life-threatening bodily injury? And those are just – I mean, just open this at random. Well, Your Honor, the same concerns were expressed in Johnson with respect to the Court's application of the vagueness doctrine in that case. Concerns were expressed about other provisions being ruled vague, and the Court determined that the – because the career offender – well, there the ACCA residual clause, but here the career offender residual clause that uses the same language – because it used this very specific combination of a significant risk standard and an ordinary case analysis, that it was that combination that rendered it vagueness and vague in a unique way that wouldn't implicate other provisions. Sotomayor's wasn't the essence of our ruling in Johnson, that it's one thing to ask a judge to apply a determination to existing facts, as opposed to what happens with the residual clause, which is you're asking a judge to basically fantasize about what the average case is like. That's correct, Your Honor. And so guidelines that you're being asked to apply to specific facts are reviewable by a court, aren't they? We can look at the facts and say, was the judge right? Was this more than minimal planning or not? That's correct, Your Honor. But it's almost impossible, according to Johnson, to find what an ordinary case would look like because there was no standard of comparison of what ordinary meant. That's correct, Your Honor. And I'm aware of no other legal provisions, no other guidelines that use this ordinary case analysis that forces the court to imagine a typical case and then apply the guidelines in that way. There are circuit courts who already permit vagueness challenges to provisions. That's correct, Your Honor. The Ninth Circuit has allowed vagueness challenges to guidelines provisions for decades now, and none has been successful. I mean, what's unusual about the residual clause is that it really is unique among sentencing provisions, and that was in part why the court was concerned about its application in the Armed Criminal Act in Johnson, and it should be equally of concerning nature here. I don't know why you run away from the proposition that less is better. I would have thought that's central to your argument. And it's not — it sounds bad, but it's not. I mean, maybe less was going to be more susceptible to another challenge, like it's arbitrary. But you can see that it's not a vagueness problem. I mean, if you — you know, the coin toss proposition. If you say the sentence will be decided by a coin toss, it's not vague. Everybody knows exactly what's going to happen, but it might be arbitrary. So in that case, less would be better. If you did not have the provision about a coin toss, which narrows the uncertainty, then that would be better. Well, Your Honor, I mean, arbitrariness is the main concern here with the residual clause, and also with the commentary, because the arbitrariness comes into play when the commission is interpreting the vague language of the residual clause to conclude that certain offenses fall within it. But the commission was undertaking it, an effort that this Court deemed impossible in Johnson. Prior to Johnson — I'm sorry. Ginsburg. May I ask you a question that's peculiar to this case, and it's essentially whether the issue we're now debating became moot when this sentence was reduced to 216 months, which is well below the Guidelines' range? Yes, Your Honor. So his sentence, the Guidelines' range, what was it? 262 to 327 months? Yes, Your Honor. And he got 216 months. Yes, Your Honor. He received a reduction in his sentence based on substantial assistance to the government. And if Mr. Beckles were to be resentenced without the career offender provision, at that resentencing, the Court would establish a Guidelines' range, choose a sentence within that range, and then apply the same 40 percent reduction based on his substantial assistance to whatever sentence the judge — the judge came up with at that resentencing without the career offender guideline. Was this 40 percent normal for this judge? Did he say he was basing it on a percentage? She did, Your Honor, and it was a 40 percent reduction based on his substantial assistance. This is a fairly deep question, actually, you're going into, in my mind. And what is the — before I reach the constitutional question, I would ask whether the guideline falls within the scope of the word Guidelines enabling statute. I don't see why you have to get into the Constitution. But even doing it that way, it then becomes a matter of the extent to which the Federal courts are going to review the substantive guidelines, itself an open question. So rather than get into that, I might think about your case like this. Why was the statute vague? It was vague because, with three examples preceding the residual clause, they tried to apply it, Congress, to thousands of State criminal statutes that vary in a variety of ways, one from the other. That's what caused the problem, I think. Now, if that was the problem, that isn't present here, because these apply to Federal statutes. Moreover, they don't apply to State statutes. Oh, maybe I see, yeah, yeah, you're right, there is, you're right, you're right. I can't get around it that way. Thank you for your answer. And, but, let's go a step further. Let's go a step further. No, you got me right thinking the right thing. I'm proceeding because one way of clarifying the kind of vagueness that's there in the statute is through example. If we'd had 20 examples instead of three, we might never have had to get to that constitutional issue. So here, what the commission did was provide some examples. That's all. And one of the examples was a sawed-off shotgun. So why isn't that sufficient? I mean, there was vagueness, assume, because similar reasons, assume. And now we have an effort to cure. And the effort to cure is by giving examples. And why isn't that good enough? Well, Your Honor, because the ---- sorry, I should just keep my mouth shut. Because, Your Honor, I believe that the court has held that the residual clause has no meaning. And because it has no meaning, the commission is in no better place to interpret or clarify that language. Where language is meaningless, how can it be clarified? And the Court struggled with this, as you said. And prior to Johnson and James and Sykes and Begay and Chambers, the Court attempted to narrow and clarify this language and provide examples. But for the very reasons that Your Honor states, it was impossible to do so. And the career offender provision is even broader than the Armed Career Criminal Act, because the instant offense also has to qualify. In the Armed Career Criminal Act, it was limited simply to felons in possession. Sotomayor, I guess the real question on this last point is, if what we're trying to do is to regulate the defendant's conduct, not possessing this thing or not committing a crime of violence, and he knows because the commentary tells him that if he does possess a sawed-off shotgun, he's going to get this enhancement, what's arbitrary at sentencing for imposing what the defendant already knows is illegal, or will subject him to the greater enhancement? I buy your argument in terms of it would be arbitrary to the Johnson reasoning to have a judge determine that a sawed-off shotgun is violent in one situation, but not in another. But if the issue of arbitrariness is the arbitrariness and capriciousness of enforcement, here the defendant knew that he was going to be subject to the enhancement at the time he committed the crime. The arbitrary here and the enforcement here comes into play when it is the commission interpreting the language of the residual clause. The district court, once the commission interprets the residual clause to include possession of a sawed-off shotgun, the district court has no discretion not to apply that guideline. And so it is the commission's arbitrary. Sotomayor, I agree, no discretion to apply the guideline. No discretion, I'm sorry, to ignore the guideline. Once the commission states that this offense falls within the residual clause, district courts have to apply it. And so it is basically directly requiring the court to apply or enforce an arbitrary  Sotomayor, but how is this different from all of the examples the government gave in pages 55 to 57 or the others where we've had a vague statute and the administrative agency has narrowed it, or you have a municipal ordinance that narrows, that the city narrows in its administrative processes, and all of those cases, when they're challenged for vagueness, we look at how the statute is applied to the individual. How is this situation any different? If the statute was vague, it's vague, and what we've done instead is say, no, it's not vague because the agency has narrowed its application. Well, two responses, Your Honor. With respect to the cases involving State and local provisions and ordinances, the Court, as a matter of Federalism, has to look to the clarifying constructions that the State court or agency or local governing body has given to that language and accept it to be an interpretation of the statutory provision or whatever the provision is, and accept that as a clarifying construction of the State provision. With respect to respecting the decisions or the clarifying actions of a regulatory body, a Federal regulatory body, the Court will do that only in certain situations. And here, that kind of deference should not be afforded to the agency's interpretation of the career offender guideline, in part because, as I said, the agency is interpreting  And in that respect, under Gonzales, the kind of Chevron deference is not afforded. The same is true here with respect to Seminole Rock deference, which is what Stinson deference for the guidelines relies upon, or Ore deference, as the Court also calls it. Here, the Commission was not interpreting ambiguous language. It was not choosing among ascertainable meanings in selecting the commentary as providing – I'm sorry, as selecting possession of a sawed-off shotgun as an offense that fell within the residual clause. Here, the Commission was interpreting vague language that had no meaning, and in that respect, it is not entitled to the deference in the same way that other interpretations of the guidelines might be. And I'd like to reserve my remaining time. Roberts. Thank you, counsel. Thank you. Mr. Dreeben. Mr. Chief Justice, and may it please the Court. The threshold question in this case is one of retroactivity, whether the rule that Petitioner seeks would be retroactive to cases on collateral review if the Court were to adopt it. In view of the questions from Justice Breyer and Justice Alito and others on the bench, I think it may be useful to start at the outset to describe what we think the due process rule is in this case and why it does not call into question traditional discretionary sentencing within a broad range that is not informed by sentencing guidelines. So I think the starting point for analysis here is due process. Due process does not itself require that all provisions of law not be vague in some customary dictionary sense. Due process protects fundamental fairness. And when looking at fundamental fairness, the Court examines history and practice. Now, the history of this country has included discretionary sentencing within a range without any guidance to the judge since the 1790 Crimes Act, and through much of the 19th century, many statutes were written that way. The idea that due process vagueness analysis would somehow invalidate that contradicts cases like Medina, which take as their touchstone for due process historical practice. I also think that the purposes of what later was announced as the vagueness doctrine are not implicated in traditional sentencing. The reason for that is not that traditional sentencing produces uniform or predictable results. It does not. It maximizes instead another important value of sentencing, which is individualization or proportionality. Sentencing involves a large array of facts that are very difficult to reduce to rules. The traditional sentencing process relies on the judge and the defendant in the courtroom with counsel to examine the multiplicity of facts that bear on appropriate sentencing and then to select a sentence within that range. That is not arbitrary. We have cited in footnote 2 of our reply brief a case from this Court where the Court described that as conscientious judgment rather than arbitrary action. It therefore does not implicate the purpose of the due process vagueness doctrine. On the other hand, the sentencing guidelines, as this Court has described them in recent opinions that examined the advisory system that's been put into place post Booker, stress that that system injects law into the sentencing process. The judge must calculate the guidelines range. The judge must make be cognizant of it throughout the sentencing process. That guidelines range informs the judge's selection of a sentence because the judge knows that it reflects the considered expert views of the Sentencing Commission filtered through congressional policy. And because of those features of the sentencing system in the district court, the court has described the guidelines range as having an anchoring effect which tends to influence sentences, is intended to do so, and has that effect. And it is continuing to have that effect. Since 2011, the rate of within-range and government-sponsored departures in the guidelines has remained relatively constant. It has not dropped significantly. It's still at around the 80 percent range. So basically your argument is that there's a continuum. So that if you have complete judicial discretion, barring the consideration of some impermissible invidious factor, within the statutory guideline range, there's no vagueness problem. On the other hand, if you have mandatory guidelines, you may have to apply vagueness principles to the mandatory guidelines. Now, here, so someplace in the middle, you get you are close enough to the mandatory that that has to apply. That's your argument? Dreeben, yes, we have not taken a position on the mandatory guidelines in this case. It's an advisory guidelines case. But the Court's description of the ---- Alito, well, if advisory guidelines are subject to vagueness challenges, then truly mandatory guidelines would be subject to vagueness. Dreeben, yes, for vagueness. I'm talking about for retroactivity. Alito, all right. Well, for vagueness purposes. Now, suppose what the Court had said was the guidelines are purely advisory. Now, you know, they're the Sentencing Commission, very respected group, studied the problem. Judges, you really ought to read them, you ought to take them into account. But in the end, it's your call, based on the factors that are set out in the Sentencing Reform Act. Would the result be the same? I think it would depend, Justice Alito, on how the guidelines were implemented and whether additional rules that were procedural in character, designed to reinforce the primacy of the guidelines, were adopted. It's hard to answer that question in the abstract. What we do know today is that, based on the analysis in Pugh and Molina-Martinez and the further refinements that the Court has discussed and addressed in cases like Rita and Gall, the guidelines do have a significant lodestar or lodestone effect in the sentencing process on appeal. A court of appeals may consider a within-range sentence presumably reasonable. And these legal features of the system led the Court in the Pugh case to apply the ex post facto clause to changes in the advisory range. Alito, what will happen 10 years from now? Let's say 10 years from now when you have the – there's no district judge anymore who even remembers the mandatory guideline regime. And there are departures in 85 percent of the cases. And the judges go through the drill, they, you know, they calculate the guidelines and all of that. But then they go on and they impose the type of sentence that they think adequately serves the legitimate purposes of sentencing. Would your argument be the same, then? Dreeben, Well, we made a version of that argument in Pugh, and this Court rejected it. And I think empirical evidence is not suggesting that sentencing courts are drifting radically away from the guidelines. And one of the reasons for that is there's a feedback loop in place where the commission examines the guidelines in practice, takes note when district judges are varying or departing from them, and incorporates those refinements into the guidelines. Roberts Well, maybe not radically departing, but steadily increasing their departures. Isn't that right? Dreeben I don't think so, Mr. Chief Justice. I looked at the statistics this weekend, and there is a trend line that hovers around the 80 percent level for within-range sentences plus the government-sponsored departures, which are incorporated into the guidelines and recognized as not being non-guideline sentence, because the government is seeking them within the framework of the guidelines. So the guidelines are continuing to have an influential role in Federal sentencing as they are intended to do, precisely because the commission is looking at the same 3553a factors that the district judge does. The commission takes into account actual experience in sentencing and refines the guidelines in order to incorporate those improvements into it. Courts of appeals can presume within-range sentences reasonable on appeal, which the Court recognized in Rita would likely not. Kennedy It seems to me that that explanation is in conflict and considerable tension with your argument that this is not – that this is procedural. Why isn't it substantive? Dreeben So I think, Justice Kennedy, that the reason is you're taking two different positions on these points. Dreeben And I think that's because there are two different legal tests that are in play. The vagueness doctrine is looking at the potential for lack of notice and arbitrary action, and I think arbitrariness is the essential complaint about a vague guideline that results in something that is a little better than a coin flip as to whether a person is treated as a career offender or not. Kennedy Well, but you say the vagueness challenge analysis applies because this whole class is affected. Dreeben Yes. Kennedy And that seems to me inconsistent with saying that they're procedural because they don't play a dispositive role. Dreeben They play an important role. I think dispositive is not the right statement. The test in retroactivity is much stricter than the question of whether due process should apply. The test in retroactivity, as this Court most recently articulated it in the Montgomery case and again in the Welch case, is whether a rule alters the range of conduct or the class of persons who is punished in a way such as effectively to make the person no longer eligible for the criminal sentence that the government seeks. And that test is narrow because it responds to the very compelling finality concerns in the habeas context that are different from when the Court is examining what the Constitution requires.  That's the thing I'd like you to think about. And tell me what you think. This is what is bothering me about the government's position. This is important, the government's position. Put in your mind the words that we're talking about, or otherwise involves conduct that presents a serious potential risk of physical injury, okay? Those are the words. Put them over here, they appear in the guideline. Put them over here, they appear in the statute. When they appear in the statute, they have a meaning. And it's fairly limited. And there's likely to be one. And eventually there will be an authoritative meaning. When it appears over here in the guideline, it could be viewed as having an authoritative meaning, or it could be viewed as leaving up to the district judge the job of interpreting these sensibly in the case, just like we used to do. And then the commission goes around, first to review it for reasonableness at the court of appeals, and then the commission goes through the feedback process that you describe. Now, that would mean, one, a system that works itself towards a more logical, sensible approach in terms of punishment. And it also would mean that the normal words vagueness in the Constitution, or if you like, feed it through the statute, Tory-enabling legislation. It would mean that they would have different meanings in the two, constitutional versus statute versus guideline. But the purpose of that would be to get better guidelines. So, Justice Breyer, I agree with the impulse of that question to the extent that we're talking about the enumerated offenses in the commentary. I think that those, whether they're viewed as construing the language of the residual clause or providing an independent specification of what is a crime of violence, they satisfy due process vagueness concerns. Where I part company with that description of how the constitutional analysis is affected is that the commission selected the residual clause language to mirror the ACCA residual clause. Breyer, we know that because this is the words I read you are just one set of what I bet are hundreds of examples. In these guidelines, if you go through and think it doesn't make too much sense. Dreeben, I think we'd, well, I'd like to come back to whether the guidelines are vague as a general matter, because I do not think they are. I spent a lot of time going through them this weekend, and I was amazed at how specific they are and how they do mirror things that are customarily elements of offense. Serious bodily injury is a very customary element of the offense. The guidelines were framed to be administrable in factual and judgmental ways that courts administer all the time in criminal law. What was different about the residual clause is that the court was instruct the Congress instructed the commission to put together a career offender guideline that covered people who had crimes of violence or serious drug offenses for their instant offense and two others, and they were older than 18. The commission originally defined crime of violence by borrowing the Section 16B definition of crime of violence, which Congress adopted in the same act that passed the Sentencing Reform Act. It later switched to the ACCA definition, the residual clause that this Court later invalidated in Johnson. It made one tweak to the enumerated offenses. Instead of saying burglary, it said burglary of a dwelling, but it otherwise consciously sought to adopt the ACCA framework, and I think it did so largely to simplify the administration of complicated criminal history determinations in recidivism cases in Federal prosecutions. It added to that specifications of particularized offenses, which it had done before when Section 16B language was controlling. So it always had a list of enumerated offenses in the commentary, and it refined those slightly, but it retained them. So I think the proper way to look at this is that the commission was seeking to model this language on congressional statutes in the ACCA, and courts across the country heeded that by interchangeably citing sentencing guidelines, residual clause cases, and ACCA residual clause cases. So when this Court in Johnson overruled the two sentencing residual clause cases that had come out in favor of the government and said that the residual clause was vague across the board, sentencing courts no longer had a legal framework at all to interpret the residual clause except for the commentary. The commentary provides specificity, but the methodology that this Court condemned as producing a shapeless provision, a provision that was a black hole of uncertainty and confusion, that language existed. And the problem with that from a due process point of view is that it leads to arbitrary assignments of classifications such as the career offender classification or the firearms guideline, which also keys on prior crimes of violence that the defendant had in his history, and it leads to the assignment of a range which then serves as the anchor for sentencing that it provides a arbitrary framework. The judge thinks that the commission intends that this individual will be treated as a career offender or somebody who has a firearms offense with a crime of violence in his background. But the judge has no way of knowing whether that is arbitrary or non-arbitrary because the commission, having borrowed vague language, ends up with a vague statute. Sotomayor, can we go back to Justice Kennedy's question? In Montgomery, we had a rule that appeared procedural, just like this one. The judge at sentencing could still sentence a defendant to life without parole. After a particular finding, i.e., that the individual was irredeemable. Why is that different than here? Meaning, if the guidelines are procedural in the Montgomery sense because they are an anchor on what a judge does, why isn't there a substantial risk, like in Montgomery, that a defendant is going to be sentenced because of the guideline and not because of a finding that he or she is entitled to that sentence? And I take that substantial risk to be proven by your own statistic. Eighty percent of judges sentenced within the guidelines. But more importantly, for those circuits that have permitted or have applied retroactivity to Johnson and defendants have been resentenced, the vast majority have received a much lower sentence. So, Justice Sotomayor, let me try to take the conceptual point and then the practical point. Conceptually, Montgomery interpreted Miller v. Alabama as basically requiring a finding to go to a life sentence, a finding of incorrigibility that prior law had not required. And if that finding was not made, the defendant is not eligible for a life sentence if he's a juvenile homicide defendant. So Montgomery, rather than looking at Miller and saying, well, is it likely or unlikely that youths will get a life sentence, it interpreted Miller as imposing a eligibility requirement, and that is why it satisfied habeas, not because there was some likelihood analysis. If likelihood was the test, the Court would not have had to go through the analysis that it did and focus on the incorrigibility aspect. And that's what distinguishes Miller from a guideline situation. Sotomayor, but doesn't the judge still have to make a finding that there's a reason to give a defendant a higher sentence? There may be some judges who determine the nature of the past conduct qualifies this defendant for career criminal status, but absent that, it seems like the vast majority of those judges who are now resentencing don't believe that those prior – that prior criminal history justifies the higher sentence. We don't doubt, Justice Sotomayor, that the guidelines range is influential. The question is whether it sets an eligibility threshold. The test is not likelihood of outcome. That would, in effect, collapse one aspect of the test for a watershed procedural rule into the criterion for a substantive rule for retroactivity. A watershed procedural rule both has to have a fundamental effect on accuracy, plus it has to change our bedrock understanding of the elements of a criminal case. Sotomayor, could I just ask something? If we rule in your favor and say it's not retroactive, how much is left of the Johnson ruling? What effect would it have? How many cases are there, in fact, except the – I guess it's the felon in possession cases would be the one example that the guideline – that the guidelines haven't already been structured to take care of all career offenders? So our position is, as the Court knows from our submission in Welch, that in Armed Career Criminal Act cases where the effect of the residual clause was to change a defendant from having a maximum of 10 to a minimum of 15, Johnson is retroactive. And we have sought and supported retroactive rulings in the cases where somebody is no longer qualified for an Armed Career Criminal Act sentence under Johnson. Sotomayor, but outside of felon in possessions, do you think of any other situations? We do not think that sentencing guidelines should be interpreted as self-interpreting. You're not quite answering my question. Well, I – What other situations besides the felon in possession would Johnson in Welch be operative? Because as I understand it, in virtually all cases, most others, the guidelines are within the statutory maximum. That's right. Well, I think in all cases, guidelines ranges have to be within the statutory maximum, and that is precisely our point. Guidelines ranges function as advice to the judge when he is sentencing. The guidelines do not impose an insuperable barrier that requires a specific finding of fact before the judge can sentence outside the guidelines. That was the problem with mandatory guidelines. Advisory guidelines allow the judge to look at the totality of the circumstances and to make policy judgments that may be at variance with the commission. Now, they don't do that all that often because the commission is doing its job, and that is why we are on the side of Petitioner with respect to the due process issue. Do you think that we're going to do that? The third issue, you confuse me by your argument. I thought from your brief that if we decide the first issue, that is, was there fair notice of the sawed-off shotgun, then there's no vagueness and the case is over. But so I was thinking we could decide that third issue and not reach either vagueness or retroactivity. So, Justice Ginsburg, I would urge the Court to decide retroactivity. There are thousands of cases in the Federal system that have already been filed urging resentencing. But would you say that it's not necessary if we agree that in this case there was fair notice about the sawed-off shotgun being? Dreeben. Justice Ginsburg, this Court's Teague jurisprudence says that in a collateral review case, a habeas case, the threshold question is retroactivity, because if the new rule that the Petitioner seeks would not be retroactive to cases on collateral review, there should be no adjudication of that prisoner's constitutional claim. Do you think that's like jurisdiction, that we are bound, we have no choice but to decide retroactivity? It's not a jurisdictional limitation. Teague is a doctrine that this Court framed, Justice Alito, if the Court wanted to decide something else before then. But the reason why the government thinks that it would be in the interest of criminal justice for the Court to resolve the retroactivity issue is that there are thousands of cases waiting in the wings that are being held up today. Now, Justice Sotomayor, you asked me to. Sotomayor, what will happen to all of those cases that have been resentenced already? They will keep their sentences. And the ones that will be resented are the ones that are not. Sotomayor, even where the circuits have said no retroactivity, where they have permitted retroactivity? Well, no circuit has actually ruled on retroactivity. The circuits have ruled on vagueness. All except for the 11th have either said vagueness applies to the guidelines and the residual clause falls, or they have said we accept the government's concession that vagueness applies. But there have been resentencings. There have been resentencings. 88 are pointed to in Petitioner's reply brief, and Your Honor asked about those. My view on those is that they are a tiny, small, and unrepresentative sample of the cases that are waiting, being held for this one. The reason that those cases have gone forward are most likely because the judge took a look at that defendant and said, I actually am going to sentence him to a lower sentence, maybe time served. I do not want to wait for the Supreme Court's decision in Beckles. The vast majority of cases, however, are on hold, which I think could represent a view by the sentencing judges that they are not so confident that they will resentence the defendant to a lower sentence. After all, these defendants haven't had a change in their criminal history. They have had a change in the advice that the Sentencing Commission has given them. Sotomayor, you would have produced an efficient result, but I think that for the the  And that's admirable, but for many of the judges that are sitting on hundreds upon hundreds of these cases, and for U.S. attorneys that are grappling with old records and attempting to reconstruct sentencings from many years ago, they are looking to a decision by this Court on the retroactivity question. Alito, if I think that it's retroactive, should I stop there? Should I go on to consider whether it's vague, or should I just accept your concession that it's vague? Dreeben, I think that the Court should decide the legal issue. We have submitted to the Court why the due process rule that we think does exist would not be retroactive. If the Court disagrees and thinks that it would be retroactive if it is true, then I think the Court should go on to say that, yes, vagueness applies to the sentencing guidelines, but in view of the commentary here that specified the sawed-off shotgun, the residual clause is not vague as to that particular offense. And as a result, the judgment should be affirmed. But I think that the systemic interest of justice right now in the wake of this Court's decision in Johnson, and knowing the pendency of Beckles, is for the Supreme Court to pronounce authoritatively on whether retroactivity should apply to the new due process rule that Petitioner seeks and that the government thinks in light of this Court's decisions in Pugh and Molina-Martinez is correct. So the sequence of analysis in the government's view would be first to address retroactivity. If the Court agrees with the government that this is a procedural rule that does not have the consequences that Welch and Montgomery attributed to procedural rules, then the case is over. If the Court concludes that that due process rule would be retroactive if it were I do not agree that any other guideline is going to be invalid under vagueness analysis. Just this one, except insofar as the commentary has specified enumerated offenses. And on that prong, we believe that Petitioner loses because a sawed-off shotgun is an enumerated offense. Roberts. Thank you, counsel. Thank you. Mr. Mortara. Mr. Chief Justice, and may it please the Court. I want to start off correcting something that my friend said when he referred to historical sentencing as not being arbitrary. The United States Senate report on the Sentencing Reform Act said, Correcting our arbitrary and capricious method of sentencing will not be a panacea. That's in the Senate report on the Sentencing Reform Act. Judge Frenkel understood sentencing was arbitrary under the old system. It was arbitrary. It may have been individualized, but it was arbitrary.  Sotomayor, it wasn't arbitrary to the judge at issue. Correct, Your Honor. Meaning the judge at issue always had his or her own reasons. Correct. What was arbitrary was that one judge could have put different values on a reason in one place and in New York and different values in California. That's a very different form of arbitrariness. I don't think so when one looks at the sentencing factors in 3553a2, the purposes of sentencing that my friends both agree are not subject to vagueness challenges. These purposes are even more vague than the career offender enhancement. Adequate deterrence, respect for the law, just punishment. Yet they result in the calculation in the mind of the judge of a single number, a fixed determinant sentence. My friend referred to arbitrary determinant sentencing arising from the career offender enhancement residual clause. But think about what 3553a, the first sentence, says. The Court shall impose a sentence sufficient but not greater than necessary to comply with the extremely vague purposes of a two. But his point, I think, is that, yes, all that you say is true. But this is a special kind of guideline. This is like a threshold. This is like a rule of law that says get into this career offender business if and only if you satisfy this rule. Thus, most rules are telling the judge, judge, go back to your history of what this is about, look at the offender, figure out what he did, and then try to find an appropriate sentence in light of factors. This isn't that. This is off on. You either are in the career offender or you are not. And just as you couldn't even before have decided the sentence through a throw of the dice, so you cannot now interpret an on-off rule to say it's no worse than what you're talking about. And, Justice Breyer, that amounts to an argument that because the career offender enhancement residual clause isn't quite that vague, it's more subject to constitutional vagueness. Breyer, No, no, it isn't saying it's not that vague. It is that you can't rely on how sentencing used to work in order to save this on-off rule. Then what was worrying me in our conversation is I could think of other parts of the guidelines. For example, the part that deals with concurrent versus consecutive sentencing, which, you know, is a nightmare, is also the notion of a kind of on-off rule. And I'm afraid of what we would do here. So that's where I am in this. I mean, I'm not saying don't go ahead, go ahead. But I think he's trying to make a qualitative difference in what we're talking about here. Well, I do want to get back to the A-2 factors, but I'll address your question directly. My friend said that the problem here is Molina-Martinez and Pew and the weight that the guidelines are given. And that weight in part comes from RITA, which says that a appellate court can presume within guideline sentences reasonable because that reflects the judgment of both the commission and the sentencing judge that the 3553A factors have been met. But that's actually not true with the career offender enhancement, and that's because the career offender enhancement exists at the command of Congress in 994H. The commission is not actually deploying its expertise when it made the career offender enhancement. It's doing something it was commanded to do, which is make sure that sentences get at or near the statutory maximum. So the rationale for the reasonableness presumption of RITA completely goes away with the career offender guideline, and that's why the career offender enhancement should not get that kind of weight, and that's why it doesn't. My friend referred to 80 percent of sentences being within guidelines ranges. It's 75 percent outside of the guidelines ranges, guideline ranges for career offenders. Only 25 percent of career offenders in 2015 got within guidelines range sentences. And some of that is government-sponsored departures, to be sure, but an astounding nearly 30 percent of career offenders got below guideline range sentences without the government sponsoring them. And what's going on there is that judges are not giving the career offender enhancement as much weight as Molina, Martinez, and Pugh are talking about because it doesn't come from the commission's expertise on the 3553A factors and the RITA rationale is gone, and because sentencing judges are commanded to consider the very facts of the offense and the criminal history that they were deprived of considering under the ACCA. In Johnson, the Court made very clear that the saving construction offered by one of the other opinions, the so-called criminal history or record-based approach, was not available as a matter of statutory interpretation. But under the sentencing guidelines in Factor A-1, a sentencing judge must consider those facts.  And that is what is in fact happening, because judges are looking at the facts and they are not acting like automatons, blindly adhering to the guidelines, whatever their weight. But coming back to the A-2 factors, and I do want to come back to them, because   in 1984, the A-2 factors were enacted. They are vague by anyone's definition. And the only answer we get from my friends is the sentencing guidelines require a numerical range. The A-2 factors lead to a specific number, a fixed sentence in the mind of the judge. Which is more arbitrary or provides less notice? That's easy. The only other explanation we get is the weight afforded to the guidelines. I've already mentioned that a little bit, but another way we can think about it is that a district judge is allowed to deviate from the guidelines if it disagrees with them as a matter of policy. That's Kimbrough and Spears. A district judge cannot declare that they disagree with the purposes in A-2 and say, I am now going to sentence under my theory of radical over-deterrence instead of adequate deterrence. That would be reversible error under all of this Court's precedent. So whatever weight Molina-Martinez and Pugh say should be given to the guidelines, the A-2 purposes have actually equal or more weight because a district judge cannot disagree with them. They are, in a sense, more binding than the non-binding career offender enhancement. And in that respect, it goes from discretionary sentencing, which I agree historically we've all accepted as constitutional, and then to the A-2 purposes, which may be an attempt to codify that historical practice, but they are law. It is a statute. It says, shall impose a sentence, a fixed number, and they are vague. And if you accept that discretionary sentencing is constitutional and you accept that A-2 purposes are not subject to a constitutional vagueness challenge, it seems extremely difficult to accept that the career offender enhancement is somehow subject to a constitutional vagueness challenge, either because of the numerical range, it's a fixed number for A-2, or because of the weight for the reasons I've given. One other thing I wanted to raise, which is related to questions Justice Sotomayor was asking about the resentencings. I'm not aware of the percentage of those 88, what percentage that is of the total resentencing that would come up, and my friend suggested it's an unrepresentative sample, but there's plenty of confounders in those resentencings. The first is, sometimes it's been a different judge. The second is, sometimes the defendant was originally sentenced under Booker, pre-Booker, so mandatory guidelines. The third is that in some of these cases, and I've looked at the government's sentencing memorandum, the United States has gone in and said, well, because the commission has gotten rid of the residual clause, we would like the defendant's sentence to reflect the way sentences are going to be going forward, so we're asking you to impose a lower sentence because we want things to look in the future the way they're going to look for this defendant today. All of those things are confounders on the actual effect that the career offender guideline had in its original form on the defendant's sentence. And to take an example of Mr. Beckles, we've talked a lot about Molina-Martinez and Pew and some other decisions that are mentioned in Pew as giving weight to the guidelines. Most of those decisions did not exist when Mr. Beckles was actually sentenced. Only Rita was there. And Mr. Beckles' lawyer told the sentencing judge that all the factors in 3553A were equal, that none of them had any more weight than any of the others, and Mr. Beckles still got his within-guidelines-range sentence. It is true that 6 years later, the district judge said, I would have sentenced him differently. But that may be just as much an indication of a Rita Gall-style error of over-interpreting the guidelines or over-weighting them as anything else. If the Court has no further questions, I'm prepared to sit down. Thank you, counsel. Ms. Bergman, you have a minute remaining. Bergman. I'd like to make ‑‑ start with a point about retroactivity analysis. Mr. Dreeben states that the rule here is a procedural rule, and I would disagree, in part because Mr. Dreeben misstated Montgomery as an eligibility test. In both Welch and Montgomery, the defendant was eligible for the same sentence so long as the Court made specific findings. And here, just like Montgomery, it will be the rare case where a court can impose the same sentence once the defendant no longer qualifies as a career offender. And that's because the Court would have to make additional findings, just as was true in Montgomery. There, it was permanent incorrigibility, but here, to vary upward from an ordinary guideline range to the career offender range would require the judge to come forward with specific and compelling, significant determination, a justification that would be so compelling that would allow a court to double someone's sentence. And those considerations would have to be things that were not already taken into account by the Sentencing Commission when it determined what the ordinary guideline range would be. Roberts. Thank you, counsel. Thank you, Your Honor. Mr. Mortara, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below on question 2. You have ably discharged that responsibility, for which we are grateful. The case is submitted.